A.T.O. Golden Construction Corporation v. Allied World Insurance Company and Pete Vicari General Contractor, LLC. Let's see here, so Mr. Partington. Yes, your honor, good morning. May it please the court, my name is Bruce Partington and I represent both of the appellants here. Pete Vicari General Contractor and his payment bond surety, Allied World Insurance Company. I expect that the time likely will not permit discussion of the second issue which we have raised unless the court has questions on it, so I expect that we'll rely on the briefs for that issue. This appeal is about whether or not the judgment below can be sustained in the absence of competent proof of damages in a case for breach of a partially performed construction contract. This is proof that has been required by this court in the T.H. Electric v. J.D. Parada case, uniformly required by the Florida District Courts of Appeal and first required by the Florida Supreme Court back in 1936 in the Poinsettia Dairy Products case which is actually cited in the J.D. Parada case. More specifically, the proof of damages submitted here consisted solely of percentage of completion applications for payment from ATO. I've read the record pretty much most of it and so I have some record questions because I agree with you that's the issue, but I have some different points of views about what the record actually shows as to evidence, so here are my questions. First of all, I looked at the jury instructions and how the case was tried because this is a jury trial, so we're going to look at that. As I understand it, the sole claim was breach of contract. This wasn't a quantum merit cause of action. I know that may relate to damages, but the suit was for breach of contract for compensatory damages. Is that correct? That's correct, Your Honor. I know we'll get to the measure of damages, but I looked at the jury charge and all the jury was charged as to damages and I saw no objection to the jury charge. Is that correct? No, Your Honor. Okay, all right, so here's what the jury was told as to damages. One sentence, compensatory damages is the reasonable value of the labor and service performed by ATO. That pretty much is what it was, reasonable value of the labor and service. They didn't get into about damages. It's diversity. We're bound by Florida law. There's no question what Florida law is. You can prove damages quantum merit. You can prove that profit plus reasonable value, whatever, but here's what this jury was told. It was reasonable value of the labor and service performed, and as I understand your case, you say they didn't prove reasonable value of the percentage completion. Is that your claim? That's correct, Your Honor. Would you like me to respond to the other questions you've raised? Yes, go ahead. So first, you're absolutely correct that there was solely a breach of contract claim, and if you read these cases on this issue historically, they used to differentiate between a quantum merit cause of action and a breach of contract cause of action, and now they go to measure of damages. I got it. I read them all, okay, and I'm very familiar with this, but it doesn't matter. This is what the law that was charged to the jury is to what they would do, and nobody objected to the law, okay? Well, that's not, if I could, Your Honor, that's not correct. There was a substantial, the discussion of the jury instruction spans over two days in the transcript, and I believe it's the end of, let me ask you my question. Was there a charge that was actually given? Was there an objection at the end after the charge was given to the charge? The charge was, there was not an objection at the end because the court had already said, I understand your objection, and it's not waived. Okay. On appeal, have you made a claim that the district court improperly charged the jury? Well, that we have... No, that's a yes and no, sir. We did not raise that. Okay, all right. Let me move on then. We know the jury was charged. You got to show reasonable value of the thing, and I agree with you. In some cases, pay applications and percentage of work is wholly insufficient, but there are pay applications that are like one thing, and there are pay applications that are totally different, so I'm going to talk about your pay applications. You ready for that? Yes, your honor. Okay. I looked at the pay applications, and they have a schedule of values that has 152 line items where a value is put on each item of work. Are you with me on that? Is that correct? That's correct. And all the pay applications were in evidence, correct? Yes. In fact, it's so detailed that pay applications say to remove the floor, that's $12,000 in both of these different buildings, to remove the cabinets, to do this. I mean, I may have the numbers wrong. It even says the hardware for the new door. They separate the hardware for the new door versus the cost of the door. It's extremely detailed pay application, right? Yes. Okay. And then they had change orders, and they are extremely detailed too. Separated by line item is to the value of the work, correct? Yes. All right. So, here's Mr. Vicari's testimony about all these schedule values in the pay applications, because I think you, and I'm going to be candid with you, I think you use some general principles from Florida law to try to, that are not applicable to the evidence in this case. It's kind of a general principle, but when you look at the your client, Mr. Vicari testifies, he negotiated the schedule of values with ATO in those pay applications. You don't dispute that, do you? The schedules of values were negotiated between the parties and ultimately approved, yes. Yes. Okay. And the schedule of values, but here's what he then says. He says, okay, and Mr. Vicari, do you believe that those values were the fair market value for each item of work? He says, because this is how it's done. You do items, and Mr. Vicari on page 28, he says, and you believe there was a fair market value in the contract, yes, in the pay application, I mean in the schedule of values. He agreed to that, right? He agreed to that in that context. Yes, Your Honor. Well, the schedule of values were part of the contract, right? Well, they were, but ultimately in the aggregate. Okay. Well, I understand that. We're going to get to the percentage of work and how we go to that next. Then, and you negotiated the change orders too. Yes. And you agreed to the prices contained in the change orders as the value of the work. That's correct too, right? Yes. Okay. And then, not only do we have in the pay applications, we have extremely detailed, as I said, down to nuts and bolts, 152 items. You then have the contractor certifies, that is the amount of work I completed. I know there's a percentage. He puts in, I'm looking at one pay application. He says, I've done 12% of this line item, and he certifies that, and the language is that the work covered by this application, i.e. that percentage of work, has been completed, right? That's his certification. The percentage of work has been completed, that's correct. Yeah, but the percentage of work is percentage of that line item. Like, how much of the flooring have you removed? It's been allocated 15,000. He says, I've removed 10% of the flooring. I want $4,000, and I certify that percentage of the flooring removal is done. That's how it works, right? That's how it works on the applications for payment. Yes, Your Honor. Okay. And then, the architect comes in, because the contractor could have not done that work, and the architect comes in and says, in the certification, the work has been done by the subcontractor, and he goes further. The quality of the work meets, the architect does the quality. He says, the quality of the work is consistent with the contract, right? That is what it says. However, there are significant limitations on the architect's certification, which I can talk about if you'd like me to. No. Here's my bottom line question. You got to have some evidence to support the verdict. Your position is, there's no competent evidence to support the verdict. That's correct. Okay. And the verdict, actually, they asked for about $400,000. They gave $50,000 on one contract and $25,000, I think, on the other one, right? Yes. Okay. And it was extremely detailed special verdict. I've looked at the verdict form. I mean, the district court was very careful, took every one of your defenses, like they left the job, they shouldn't have left, they overbilled, took every defense you did and did a special verdict saying, no, no, no, no, the jury did, right? Yes. Okay. So, now we're down to, is there any competent evidence to support the, I guess it actually was, it was $50,000 and $75,000. I'm wrong. So, it was $125,000. That's correct. Okay. And so, my question to you, given that your own client, Mr. Bakari, says the schedule of values that they used in these pay applications represent the fair market value of the work and the architect said that work was done and the contractor certified it, it may be totally dead wrong. You had some evidence that they were false, but why isn't that for the jury to determine? Because that evidence is not competent evidence for a partially performed construction contract under Florida law. And if I could respond... And you need to move to exclude it as inadmissible evidence. But the fact is that evidence came in and as the jury was instructed, why wasn't it entitled to rely upon it? Well, we did try to exclude it as unreliable business records and the judge denied, we made that objection repeatedly and she let the payment applications in anyway. Every construction contract case you ever say, these are classic business records. Maintaining the order course of business contemporaneous with the pay applications. I can't imagine excluding these. Well, the issue in this particular case had to do with their reliability, which was the overbilling issue. But if I could get to addressing your specific questions, Judge Hall. Please do. Under a quantum error measure of damages, the value, the proof of damages is essentially divorced from the contract values. And because as the Fred Howland case says, the value is not the value to the defendant. It's the value judged by the market. And when Mr. Vacari, P.J. Vacari talked about it, he spoke about it in terms of an aggregate value for the entire contract sum. And so the value is ultimately a conclusion. It's not some shibboleth that value is also not linear on a... Wait a minute. He talked about the schedule of values and said they were a fair market value of the work. He did. But that also, those fair market values include within each of them overhead and profit, which is unrecoverable under a quantum error measure of damages. And so there was no effort at trial for ATO to remove the profit portion of those elements of damages. And it was simply, here's what the contractual value is, which necessarily includes overhead and profit. And because that relationship is not necessarily linear throughout the performance of a construction contract, that's why the courts say that this type of damages evidence is insufficient. That wasn't the charge to the jury that you got to remove the profit, less profit, reasonable value of labor and services. And overhead to perform the labor is a reasonable value for compensatory damages. I went through all your cases and none of them have evidence like this about pay applications or percentage of completion. This was an extremely detailed schedule of values. Your Honor, I think that's exactly what they have when they have, when you're billing on a percentage of completion. We don't know on the individual cases what level of detail was there. Even under your theory though, if the witness testifies, that's the fair market value. Now, it might be that you could argue, which you didn't, that that's opinion testimony that would require qualification as an expert and should be excluded on that basis or something like that. But if the witness testifies that that's the fair market value under even your theory and it's admitted for that purpose, then as the jury's charged, what else is the jury to do but rely upon it? Unless it's just going to discredit it. Well, Judge Williams ruled that expert testimony was required to establish for market value. The only person who testified to that was Ms. Luganova, who had no experience as shown by the record. But you haven't raised an issue about exclusion of that for failure to qualify as an expert. What we raised, we discussed her ability to give that testimony significantly in the briefs, Your Honor, and that she did not have the qualifications. The judge was adamant about not letting anybody talk about values other than experts. Did you appeal as an issue on appeal that her testimony should have been struck and not considered? I know you disagree about the weight to give it or the effect of it, but did you ask for it to be struck on appeal? We argue that it was not competent evidence to support the claim for damages for the reasons we outlined. Okay, I don't know whether it's competent evidence or not, but it is evidence in the case, right? It is. Those are words that were used in the testimony. Yeah, and so the question is, is it evidence that shows what the damage is? Let me, I'll read from her testimony because I should have mentioned her along with your own client. She said she prepared the pay applications that were submitted. She said, I walked through the buildings with my team, often with their superintendent from the general contractor. She says, and I quote, we visually, that's, she's with your client, the general contractor. We visually inspected the work that was completed, assigned reasonable value and input into the pay applications. And after you inputted the reasonable value, what would happen next? Then we would submit them to, what happened next? We would submit it to Joey for review. Who's Joey? Joey is an administrative employee of Pete McCary, general contractor. Right, and then he would have, Joey would have to review it. I think you're right under Florida law, there's sometimes pay applications, percentage of work, don't cut it, it's insufficient. The problem is what happened in this particular case and the type of pay applications, the type of testimony, just, I just felt like you know where I was coming from, Mr. Pardon, so you'd know what my concern is. So, and I've used a lot of his time, so go ahead and say what you want to say, two more minutes. Yes, I'd like to address, I guess, probably two principal issues of your concerns. First, the cases do not make the distinction that you're drawing about the level of details in the application for payment. What they proscribe is using contract values, contract values to calculate damages on a quantum merit claim, and so that's part one, and what happened here is using contract values, which include overhead and profit margins, which is improper for a quantum merit. There was no evidence presented on labor costs, no evidence presented on the market value for the labor. Ms. Luganova had no value for that, and if you, her testimony additionally was that she was calculating the values, what she said was the reasonable value was being calculated on a percentage of completion basis. If an item had a line item of say a hundred thousand dollars and ten of them were done, she would calculate it on that basis. How many of them were done is divided into the total, which is, that's a ratio, that's a ratio. Mr. McCary said the values were established based on the fair market value of the work at the get-go. But those are contract values, and that's the distinction that particularly... He testified it was fair market value on a lump sum basis in the aggregate, not for the individual items and not for the individual total labor and material, which relates back to a couple of things regarding the certification issue, which Judge Hull, you talked about a The first is that these payment applications, both under the prime contract and under the subcontract, are not final. They are subject to being reviewed and revisited at any time. Indeed, the subcontract describes them as estimates. And then with respect to the architect certification, the architect certification, the language in the contract section 9.4.2 of the general condition specifically says, I'm not looking at the subcontractor's applications for payment to determine value. But the market value is, in this case, is viewed, what Mr. McCary was talking about, is in the aggregate. And that's a different measure. In essence, that's the completed contract measure of damage. Mr. Partington, we've gone well over, but you've Mr. Taylor, you're okay. Good. I just want to make sure you weren't muted. Whoa, whoa, whoa, whoa. I need to get the clock set. Okay. Thank you. May it please the court. My name is Tim Taylor, and I represent the Appley ATO Golden Construction Corp. And although this appeal has hundreds of pages of briefing, this can be boiled down to a simple crux of the faulty premise that the appellee failed to present competent substantial evidence of damages to support the judgment. However, if we look at just a core set of facts in this case, and the case is cited by not only the appellee, but the appellant, it will be shown that not only was there competent substantial evidence, but rather prima facie evidence of damages. And I say that because if we look at just the contract, which is what we have to review here de novo, and the application of the facts of the contract, is the contract had a very specific payment provision as to how payments were going to be governed under the contract. And although those provisions were specific, they're very common in the industry. And I just want to point the court's attention to just a couple of those. Under 9.4.1 of the general conditions, the architect is issued a certificate of payment for an amount as the architect determines is proper. And under 9.4.2, the architect's certification is a representation of the contractor's entitled to payment. Under 9.6.1, once the architect issues the certificate of payment, the owner shall make payment to the contractor. This is a mandatory obligation of the owner to the contractor based upon the architect's certification. And then we look at 9.6.2, once the contractor receives payment, the contractor shall pay its subcontractors within seven days. Once again, mandatory payment provision based upon the event of the architect's certification of payment. If the contractor refuses to pay its subcontractor, then under its contract with the owner under 12.1.12, the contractor has to return that money to the owner within 30 days. And there would have been a review process by the architect to step in and then inspect the subcontractor's work. There's no dispute that the architect did issue a certificate of payment for work covered by ATO Golden in this case, under payment application six. There's no dispute that the contractor was paid by the owner for this work. And there's no dispute that the contractor failed to pay ATO Diepoli. And so we have cited three cases to support our position on the arc of the relevancy and the importance of... Doesn't this really come down to the way the case was tried and the way that Judge Hull was asking your adversary, and that is, how was the jury charged to measure damages? And what was the testimony about that? You want to talk about these cases and all that, but isn't that really what this is about? Well, Your Honor, it is about the charge as to damages and the evidence submitted. And the reason why I wanted to bring back at least one case that is cited by the appellant in this case in response, which is the Franklin Bill case, this court's own opinion, as it stated, although the architect's certificate is not final, such certificates are prima facie evidence of the context. And so if this court has already determined that the architect's certification for payment under these contracts is prima facie evidence, then the appellant's appeal must fail because this appeal is based upon not whether we prima facie evidence is evidence that will support the judgment. And so if this court's prior ruling on these architect's certifications is controlling as to the fact that it represents prima facie evidence, well, then the appeal must necessarily fail. And I want to address Mr. Partington... Before you do, Mr. Taylor, this is Judge Marcus. I have just one question going back to what my as a breach of contract case, not a quantum Merowith case. Is that correct? That's correct, Your Honor. There was no charge on the theory of quantum Merowith. Is that correct? That's correct. There was no quantum... That's correct. The jury was charged based upon the two methods of damages under a breach of contract claim that it was entitled. So under breach of contract, you're either entitled to the cost plus your profits or the reasonable value of your work. We stipulated at trial that plaintiff was proceeding under the reasonable value of its work under its breach of contract claim. And the jury was charged on that? That's correct, Your Honor. The charge that was given was not objected to? No, Your Honor. And then there was testimony by at least a couple of witnesses about what the fair market value of these services was? That's correct, including construction loan engineer inspector that went out to the project site after the architect certification to verify the work in place and testify that it was a reasonable value of the work as they inspected. And that's why they approved payment from the construction loan. So there are many layers of inspections and approvals. And all that went into evidence at trial and was elicited. I think we missed the forest for the trees. It just seems like this is easier than you're making it out to be. No, and Your Honor, I agree. Our position all along is we have competent substantial evidence to support this judgment. And as Your Honor has noted, these are detailed payment application business records that came in that are part of the contract documents, which is why they are prepared and made. They're fully inspected and evaluate. They're certified for payment. Payment is being issued. There was an obligation under the contract, which is why it's a breach of contract action to pay my client as a result of the contractor being paid for these sums. So that was the evidence that went towards a breach of contract. And so we believe it is competent and substantial and rather even qualifies as prima facie evidence from this relates to those issues. We believe this court should deny the appellant's request to reverse the trial court and should affirm on the basis of the satisfaction of the requirement of competent substantial evidence in this case. Your Honor, I don't know if I need to go into issue number two, which was there. It wasn't raised in the opening. So if you if you raise it, then you'll get to hear from your opponent and not have an opportunity to respond to him. That's so that's your choice, really. Thank you, Your Honor. I will not. I will not address the second issue on appeal. We do have a there's no rebuttal on an issue that neither of you discussed. So you're you're, you know, whatever, whatever you want to talk about, you'll have an opportunity to respond to it. And if we affirm on the appeal, the second issue is moved anyway, right? Correct. Right. So it doesn't matter. Right. That is correct. And so on that basis, Your Honor, I respectfully request that you do affirm the trial court's ruling on this matter. And we will rest our argument at this point. Thank you, Mr. Taylor. Mr. Partington, you've saved three minutes. Yes, Your Honor. Thank you. A couple of me back through a few things. First, with respect to the architect certification issue, the cases on the talk about our architect certifications, and whether or not they have any value or not, are all where that authority is granted in the contract. It's not some principle that just granted in the contract that it doesn't count. And so it's not prima facie evidence. And here, the contract contractual provisions, particularly section 9.4.2 of the general conditions, specifically disclaim what this prima facie value of the architect certifications. Second, the on the jury instruction charge. Well, let me let me back up. This case was throughout the entirety of this case, the argument was, these are the payment applications. That's what we're owed. It did not become a quantum Merowith case until the end. In fact, we saw it discovery relating to what would be quantum Merowith information, which would be labor costs, material costs that was objected to, and the judge and the magistrate judge refused our ability to get that. So there was no evidence that came in on that that would show those values. But the key point is that this quantum, well, I think the way that Judge Hull was suggesting by her questions that this was being evaluated was, in essence, the measure of damages for a completed construction contract, which is where you take the contract, the total contract value, and you reduce the amount that might not have been performed. But it has to be a substantially performed contract and where you're where you're reverse engineering it. And I see you shaking your head. I'm not. But that's that's that's not what I was saying at all. But but that's but that's why the courts make a distinction between the contract values and the and the proving up the fair market value by an expert, as Judge Williams said, had to be presented of labor and materials because the contract values are not reflective of damages on quantum Merowith because quantum Merowith is, in effect, a rescissionary measure of damages. It is to put the claimant in the position they were before the contract was entered into. And here, by by the claim that was being made, those measures of damages and those evaluations include a measure of of profit, which is specifically not permissible. And there was no evidence presented on the underlying labor. We don't know what the hours were. We don't know what the rates were. We have bits and pieces of it from change orders, but certainly not a complete picture. The question is whether this evidence that was presented is some evidence of the reasonable value of the labor and services where I'm not sure whether it's substantial evidence, any evidence to support the verdict is probably enough evidence to show by a preponderance of the evidence. But the question here is, everything in this record, is it enough to sustain the verdict to show the reasonable value of the labor and service? You're right. They didn't put in labor rights. They didn't put in this and that. The question is, what they did put in, is it enough? That's the question. And the answer to that, Your Honor, is no, because under the cases that we've in is not competent evidence to show it. Okay. I think we understand your case, Mr. Partington. We'll move to the last one of the morning. Thank you.